The Honorable Judge Ricardo S. Martinez

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff<br><br>v.<br><br>KIMBERLY GABEL,<br>Defendant. | NO. CR23-054-RSM<br><br>GOVERNMENT'S SENTENCING MEMORANDUM |

Defendant Kimberly Gabel is before the Court for sentencing for her participation in a scheme to produce and distribute fake COVID-19 vaccination record cards. In April 2023, Gabel pleaded guilty to a one-count information charging conspiracy to defraud the United States, in violation of 18 U.S.C. § 371. For the reasons stated below, the United States respectfully requests the Court to sentence Gabel to a two-year term of probation and 100 hours of community service.

U.S. DEPARTMENT OF JUSTICE
FRAUD SECTION, CRIMINAL DIVISION
1400 NEW YORK AVE., NW
WASHINGTON, DC 20005
(202) 445-9670

# I. OFFENSE CONDUCT

## A. Background on the Federal COVID-19 Vaccination Program

In early 2020, the COVID-19 virus spread rapidly across our country. To respond to this national public emergency, in May 2020, the federal government initiated Operation Warp Speed to make safe and effective COVID-19 vaccines available as quickly as possible to every American adult. Seven months later, in December 2020, the first COVID-19 vaccine was administered and, by September 2021, the federal government had acquired over 673 million doses of the vaccines, which was sufficient to fully vaccinate every American adult free of charge.

To ensure the rapid and safe dissemination of the vaccines, the Centers for Disease Control and Prevention (CDC) controlled the distribution of COVID-19 vaccines and COVID-19 vaccination record cards, distributing them only to medical providers that entered into provider agreements with the CDC. PSR at ¶ 8. Pursuant to these agreements, the administrators of COVID-19 vaccines were required to provide a completed COVID-19 vaccination record card to every COVID-19 vaccine recipient.

COVID-19 vaccination record cards were designed and printed according to CDC specifications and contained both the United States Department of Health and Human Services' (HHS) and CDC's official agency logos. COVID-19 vaccination record cards recorded the name and date of birth of the individual receiving the vaccine, the name of the manufacturer of the vaccines administered, the location where each dose was administered, and the lot number of the vaccine dose. A lot number is a unique number given by vaccine manufacturers to a specific batch of a vaccine. The CDC mandated that valid proof of a COVID-19 vaccination—specifically, the COVID-19 vaccination record card—could only be provided to vaccine recipients by providers authorized by the CDC to administer COVID-19 vaccines. Through this requirement, the CDC sought to ensure that the COVID-19 vaccination record cards distributed to vaccine recipients contained

U.S. DEPARTMENT OF JUSTICE
FRAUD SECTION, CRIMINAL DIVISION
1400 NEW YORK AVE., NW
WASHINGTON, DC 20005
(202) 445-9670

accurate and complete information.

During the COVID-19 public health emergency, proof of vaccination was required by certain employers, including the federal government and numerous states, and by certain hospitals, airlines, courts, universities, large venues, such as arenas, and by some restaurants, bars, and gyms, among many other businesses and locales. In many instances, the entities requiring proof of vaccination for employment or entry insisted that individuals provide a CDC COVID-19 vaccination record card in their name (or a photograph of the same), along with a government-issued identification document, to prove that they had been fully vaccinated.

**B. Gabel Printed Hundreds of Fake CDC Vaccination Record Cards**

In April 2021, Gabel's co-conspirator Robert Van Camp obtained an electronic image of a blank COVID-19 vaccination record card that appeared visually identical to the official COVID-19 vaccination record cards designed and distributed by the CDC. *Id.* at ¶ 12. Van Camp provided the electronic image to Gabel, who owns a UPS Store in Parker, Colorado. *Id.* at ¶¶ 12, 55. At the instruction of Van Camp, Gabel printed hundreds of fake COVID-19 vaccination cards at her UPS store. *Id.* at ¶ 12. Gabel printed the fake vaccination cards to make them appear visually indistinguishable from legitimate CDC COVID-19 vaccination record cards, including by printing them in the same size and by using similar paper and ink, as the official cards, and by printing them with HHS' and the CDC's official government logos. *Id.* Gabel printed the fake cards even though she is not a medical provider and was not authorized to print COVID-19 vaccination record cards by the CDC. *Id.* at ¶ 10.

Between April 2021 through at least January 2022, Gabel printed hundreds of fake vaccination record cards at Van Camp's request. Gabel sold the fake cards to Van Camp at her UPS store's standard rate for ink and paper costs, which amounted to far below $6,500 in total. *Id.* at ¶¶ 12, 13. Gabel stopped printing fake vaccination record cards for

U.S. Department of Justice
Fraud Section, Criminal Division
1400 New York Ave., NW
Washington, DC 20005
(202) 445-9670

Van Camp in approximately February or March 2022.

**C. Van Camp Sold and Distributed the Fake Vaccination Record Cards Printed by Gabel to More Than 2,000 Individuals**

After obtaining fake blank vaccination record cards from Gabel, Van Camp completely filled out the fake cards before distributing them to buyers, including writing real names and dates of birth on the cards, along with inserting false information concerning vaccination dates, vaccination providers, vaccination sites, vaccination manufacturers, and vaccination lot numbers. Van Camp sold and distributed his fully-filled out, fake vaccination cards to more than 2,000 individuals in more than a dozen states. Van Camp charged up to $150 per card. While Gabel knew that Van Camp was selling and distributing the fake cards she printed, Gabel did not receive any compensation from Van Camp from his downstream sales of the cards. *See id.* at ¶ 13.

## II. PROCEDURAL HISTORY

On April 13, 2023, Gabel was charged by information with conspiracy to defraud the United States, in violation of Title 18, United States Code, Section 371. Dkt. 1. On April 28, 2023, Gabel pleaded guilty to the information pursuant to a plea agreement. Dkt. 7, 10.

## III. SENTENCING GUIDELINES

The United States agrees with the Probation Office on the sentencing guidelines calculations. As set forth in the Presentence Report, Gabel has a total offense level of 4 and criminal history category of I, which results in a sentencing guideline range of 0 to 6 months. PSR at ¶¶ 27, 31, 67.

## IV. SENTENCING RECOMMENDATION

The United States agrees with the Probation Office's recommendation that the Court sentence Gabel to a two-year term of probation and impose the special conditions recommended by Probation, including 100 hours of community service. The

U.S. Department of Justice
Fraud Section, Criminal Division
1400 New York Ave., NW
Washington, DC 20005
(202) 445-9670

Government believes that the recommended sentence is appropriate under the factors set forth in 18 U.S.C. §3553(a) and the information contained in the Government's filing dated August 4, 2023 (Dkt. 17), and because Gabel's conduct differs markedly from that of Van Camp.

**A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant**

Gabel committed a serious offense. She printed fake vaccination record cards for Van Camp, who she knew was selling the fake cards to hundreds of individuals. The owner of a print shop should know that forgery of a federal document is prohibited. Additionally, Gabel knew that Van Camp's buyers purchased the fake cards to circumvent COVID-19 vaccination requirements imposed during a national public health emergency. Her actions, therefore, placed others at risk and undermined other individual's ability to make informed decisions about who they were exposed to during the pandemic.

Although Gabel's offense is serious, there are some mitigating factors. For instance, Gabel did not profit from the scheme. She sold blank fake cards to Van Camp at her normal rate for printing and paper. While Van Camp subsequently sold the fake cards to buyers for up to approximately $150 each and made at least $100,000 from the scheme, Gabel did not share in—or even ask for—a cut of those proceeds. It is also notable that Gabel stopped printing fake vaccination record cards for Van Camp on her own accord before either she or Van Camp were approached by law enforcement. While that does not excuse her conduct, Gabel at least recognized on her own that what she was doing was wrong and that she needed to stop.

Soon after Gabel was approached by law enforcement, she not only fully admitted to the offense but also expressed sincere remorse for her conduct. She is clearly ashamed of the role she played in the scheme and appears to have genuinely reflected upon her

U.S. DEPARTMENT OF JUSTICE
FRAUD SECTION, CRIMINAL DIVISION
1400 NEW YORK AVE., NW
WASHINGTON, DC 20005
(202) 445-9670

actions and the consequences of them. While Gabel does have a criminal history, until the instant offense, she has lived lawfully for two decades and appears to have established a productive life and business, even while facing some personal challenges.

**B. The Need for the Sentence to Reflect the Seriousness of the Offense, to Provide Just Punishment, and to Deter Similar Conduct**

Considering the mitigating factors, the information contained in the Government's filing dated August 4, 2023 (Dkt. 17), Gabel's sincere regret, and the qualitative difference between Gabel and Van Camp's conduct (discussed below), a probationary sentence is sufficient to accomplish the goals of sentencing in this case. Through a two-year probationary term and community service, Gabel will be reminded of the role she played in the scheme and will be incentivized to abide by the law. A probationary sentence is also sufficient to make clear to Gabel that she must comply with the law even if she disagrees with it. The recommended sentence is likewise sufficient to deter Gabel from engaging in future criminal conduct because she understands that more severe sanctions will be imposed if that occurs.

**C. The Need to Avoid Unwarranted Sentence Disparities Among Defendants**

Gabel is clearly in a qualitatively different position from Van Camp, the organizer of the scheme. While Gabel did print the fake vaccination cards, unlike Van Camp, she was not involved in the other aspects of the scheme, including filling out the fake cards with false vaccination information, communicating with buyers and distributors about the cards, and selling the cards to hundreds of individuals in more than a dozen states. In addition, as noted above, Gabel did not share in the considerable proceeds generated by the scheme. Furthermore, Gabel did not make violent comments about fighting back against the federal government's vaccination efforts. Accordingly, the Government believes that the sentence it is recommending for Gabel will avoid unwarranted disparities because it appropriately accounts for her role and conduct in the scheme

U.S. DEPARTMENT OF JUSTICE
FRAUD SECTION, CRIMINAL DIVISION
1400 NEW YORK AVE., NW
WASHINGTON, DC 20005
(202) 445-9670

versus that of her co-conspirator.

## V. CONCLUSION

For the foregoing reasons, the Court should sentence Gabel to a two-year term of probation, with a special condition requiring that she perform 100 hours of community service.

Dated: August 15, 2023

Respectfully submitted,

GLENN S. LEON
Chief, Fraud Section
Criminal Division
U.S. Department of Justice

 *s/ Christopher Wenger*
CHRISTOPHER WENGER
S. BABU KAZA
Trial Attorneys
Fraud Section, Criminal Division
U.S. Department of Justice
1400 New York Ave, NW
Washington, DC 20005
Phone: 202-445-9670
Fax: 202-514-3708
Email: christopher.wenger@usdoj.gov

United States' Sentencing Memorandum - 7
*United States v. Gabel*, CR23-054-RSM

U.S. DEPARTMENT OF JUSTICE
FRAUD SECTION, CRIMINAL DIVISION
1400 NEW YORK AVE., NW
WASHINGTON, DC 20005
(202) 445-9670